In the Matter of Jac. W. Wyte (Formerly Known as Jacob Weissberger), an Attorney, Respondent.

First Department, February 13, 1931.

*Einar Chrystie*, for the petitioner.

*Nathan Waxman*, for the respondent.

DOWLING, P. J. Under the name of Jacob Weissberger, the respondent was admitted to practice as an attorney and counselor in the State of New York at a term of the Appellate Division, First Department, on July 12, 1906. He has practiced law in this State since his admission, with the exception of a period of about two years, 1918–1920, when he resided in the State of Oklahoma. While he was a resident of that State it is claimed his name was changed by order of a court thereof to Jac. W. Wyte, but no copy of such an order authorizing the change has been filed with this court.

The petition herein charges respondent with misconduct, briefly, as follows: He was retained by one Kroonenberg, acting in behalf of Etienne Delaunoy, of Amsterdam, Holland, to collect a claim of $500 due Delaunoy from Louis & Co., of New York. On August 10, 1928, he received a check for $500 from Louis & Co. drawn to the order of Etienne Delaunoy in payment of the claim. He indorsed the name of Etienne Delaunoy on the check, collected the proceeds thereof and converted the same to his own use. Thereafter from time to time he made false representations to Kroonenberg to the effect that it would be necessary to bring suit to collect the money from Louis & Co. He also stated to Kroonenberg that he had arranged with Louis & Co. for the payment of Delaunoy's claim in installments, and thereafter he sent sums of money to Kroonenberg from time to time which he stated represented the installments collected in accordance with this agreement. The final payment of Delaunoy's share of the money collected was made to Kroonenberg April 23, 1929, over eight months after the money had been collected and after Kroonenberg had threatened to bring the situation to the attention of the appropriate authorities, because he had failed to comply with numerous requests for a copy of the agreement of settlement, which respondent falsely represented he had entered into with Louis & Co. and filed in court.

After respondent appeared and answered, the matter was referred to one of the learned official referees. The latter has duly reported

and the matter is now before the court on a motion by the petitioner for such action as the court may deem proper.

In his answer, and before the official referee, the respondent admitted the truth of the charges against him. In mitigation he pleads necessitous personal circumstances.

The record discloses that in 1928 one Etienne Delaunoy, of Amsterdam, Holland, had a claim against Louis & Co., of New York, for $500, the balance due on a certain tapestry. Delaunoy gave a power of attorney to collect the claim to Bartholomeus W. Kroonenberg. Kroonenberg came to New York and endeavored personally to collect the claim from Louis & Co. Meeting with no success, he retained respondent about July 21, 1928. The arrangement was that respondent was to receive twenty-five per cent of the amount collected. Under date of July 28, 1928, respondent wrote Louis & Co. demanding payment. In response to this first letter, Albert R. Louis talked to respondent on the telephone and promised to send a check several days later. Under date of August 8, 1928, respondent again wrote Louis & Co. reminding them of the promise to adjust the matter, and in response to this letter, Albert R. Louis sent respondent the check of Louis & Co., dated August 10, 1928, to the order of Etienne Delaunoy, for $500, on the Manufacturers Trust Company. In due course this check was paid and returned to Louis & Co. It bears the indorsement "In full payment of all demands to date, Etienne Delaunoy." And below, "Jac. W. Wyte."

Meanwhile, and under date of August sixth, respondent wrote to Kroonenberg a letter in which he stated in part: "I wanted to advise you that we must commence suit against Louis as he claims to be unable to do anything until next month so that I feel that a summons would have the effect of making him pay something immediately. Please see me at once." Kroonenberg's testimony is that he called on respondent after he received this letter, and at respondent's request gave him ten dollars for expenses for the suit.

On September 26, 1928, respondent wrote Kroonenberg as follows: "The reason why I did not write you was because I was waiting until the middle or latter part of next week when I had intended to prepare papers to send to Europe for signature in order to be ready for trial which I am hoping to be able to do as soon as I can get the papers ready, sent and returned. I have not forgotten about the matter. When I have these papers ready, I will ask you to call to see me." Kroonenberg testified that he went to see respondent after receiving this letter. His testimony as to what happened on that visit is as follows: "I remember that I went to Mr. Wyte and asked him what he meant by making papers ready for Holland,

and he said he had to have papers from Mr. Delaunoy, you see, somebody who acknowledged Mr. Louis buy the tapestry in Holland and that was necessary in order to open a suit here in New York. I know I was surprised because I had the power of attorney, you know. He said he was hoping to make this ready soon and then at the same time Mr. Wyte told me that there would be some dues by the court, you know, about fifty or seventy-five dollars, and that he wanted to have that paid."

Under date of October 20, 1928, Kroonenberg wrote to respondent, stating that respondent had promised to let him have the answer of Louis & Co. about the tenth of the month, and expressing surprise that he had not received it. Respondent replied to this letter, explaining that when he said the tenth he did not mean that date positively because of the uncertainty of negotiations; and further stating that he had a proposition of settlement which he thought ought to be accepted, and he asked Kroonenberg to come to see him to talk the matter over. Kroonenberg called and saw respondent and was told by him that Louis proposed a settlement of twenty-five dollars monthly, which Kroonenberg refused. Respondent then said he was going to get thirty-five dollars a month and that the first payment would come through on the tenth.

Respondent wrote Kroonenberg, under date of November 9, 1928, a letter stating as follows: " The first payment will come through very shortly. I could not set a definite date for the first payment because of the fact that in the first place business is very bad and in the second place he has all his bills to meet between now and the 15th but immediately after the 15th his attorney advises me he will get me a first payment and then will enter into a definite stipulation as to the set date for the subsequent payments to be made. Just as soon as I get this first payment I will either send it to you or have you call for it."

November 27, 1928, respondent wrote Kroonenberg that he had just been advised that he would receive a check on Friday of that week. Sometime thereafter a payment was made to Kroonenberg, who, under date of December 20, 1928, acknowledged receipt of the first payment of thirty-five dollars.

On January 14, 1929, respondent wrote Kroonenberg that he had received a check for twenty-five dollars, which he had deposited, and that he would be ready to send Kroonenberg a check as soon as it cleared through the bank. Three days later he sent a check for thirty-five dollars to Kroonenberg.

Under date of February 12, 1929, Kroonenberg wrote respondent complaining that he had not yet received the monthly check, and

requesting a copy of the agreement with Louis & Co., which respondent had promised him. Kroonenberg's testimony is that after the first payment, he told respondent he would like to see the agreement, and that respondent then told him he did not have it in his office, that it was in court, and that he had to go to court for it. Respondent wrote Kroonenberg on February 14, 1929, inclosing a money order for thirty-five dollars, and referring to the request for a copy of the agreement, said: " I will have to go to the court for the purpose of copying the agreement and as soon as I have had an opportunity to do so I will forward the same to you."

On February 21, 1929, Kroonenberg acknowledged receipt of the money order for thirty-five dollars, and again asked for a copy of the agreement. And on February 28, 1929, he wrote that he was still without a copy of the agreement and asked what court the agreement was at, that he might go himself and get a copy. No reply was made to this letter.

On March 21, 1929, respondent sent a check for fifty dollars. Kroonenberg's testimony is that prior thereto and after the receipt of the previous payment, respondent had told him he was trying to get Louis to increase the payment to fifty dollars a month.

Under date of April 14, 1929, Kroonenberg wrote respondent that he had not received the check due the tenth, wondering why respondent had him wait till the fifteenth or twentieth of every month before turning the payments over to him, stating that he could understand Louis being one or two times late, and doubting that it happened each time. This letter concludes with the following: " To tell you the truth my patience in this affair is all exhausted now and I hope you will settle this case in one total payment, for which I expect your or Louis cheque by return mail." Two days later respondent sent Kroonenberg a check for seventy-five dollars with a letter stating, in part: " * * * that is all I was able to get this month and I got it yesterday so you see you don't even give me time to get it through the bank." Kroonenberg replied acknowledging receipt of the check for seventy-five dollars, and referring to the remark about respondent not having the time to put the check through the bank, he said he was perfectly satisfied with Louis' checks, and, moreover, would like to see them. He complained further about the failure to receive a copy of the settlement agreement, which, according to this letter, respondent had refused, stating he did not have to give same to Kroonenberg. He stated that he had taken advice and had learned that respondent had to give him a copy of the agreement, and insisted that respondent do so, otherwise he would have to take other measures. Kroonenberg's testimony is that prior to sending this letter he had

a telephone conversation with respondent during which respondent had refused to give him a copy of the agreement. On April 22, 1929, respondent sent Kroonenberg a letter asking him to call to see him immediately. Kroonenberg did not do so. On April 23, 1929, respondent sent him a check for $145, which he described as being the last payment, making a total payment to Kroonenberg of $375.

Following the receipt of the check for $145, Kroonenberg wrote respondent a letter, dated April twenty-eighth, reading as follows: " I received your cheque for $145,— but am sorry to say, that this is not quite an exact answer on my letter dated the 20th inst.

" I asked you for the copy of the agreement, which you did not send.

" Consequently I regret it very much having to tell you, that I am not yet quite satisfied at all, for do you perhaps think, that I am going to pay you for the treatment of this matter a commission? You did not make an agreement at all and I am fully aware of your purposes in trying to pay me every month a little.

" In case I am wrong, just send me the agreement and I will be satisfied, otherwise I want from you the $125.,— commission and the $10.,— I paid you under witness for the so called first summons.

" I just finished a letter to somebody to put this affair into court resp. to the acknowledgment of the bar-association, fully described and with all your and the copies of all my letters, and I am only willing to keep it back upon receipt of my power of attorney, the two blanco invoices of Mr. Delaunoy, the invoice re this case, the letter from Mr. L. to Mr. D., and a check for $135.

" You would have deserved a commission as we agreed upon when you treated the affair as a lawyer is supposed to do, but in this case I think you may be very satisfied when I drop it.

" I left instructions to forward the letter to my other attorney, when no satisfactory answer from you should arrive within three days from this date and so it is quite up to you, what you want me to do.

" You shouldn't try to send me a check for less or to keep any of the papers above mentioned back, nor to try to call me up or write me letters to see you. Yours truly,
 " KROONENBERG."

Respondent's response to this was a request that Kroonenberg send the letter mentioned in his letter to his new attorney and have the new attorney communicate with respondent. Nothing was done by Kroonenberg.

On May 7, 1929, respondent wrote Kroonenberg that he had had a cable from Amsterdam asking whether Kroonenberg had

received the money from respondent, and as evidence of his fairness he was communicating with Kroonenberg to ascertain what the latter wanted done regarding the reply; he further stated that if Kroonenberg failed to communicate with his office immediately he would have to reply to the cable stating that the money had been paid. Kroonenberg's reply to this communication was a card to respondent, dated May 8, 1929, with the following message: "Your letter from yesterday. Don't be silly." Subsequent developments indicate that respondent notified the people in Holland that he had paid the money to Kroonenberg. And Kroonenberg, in turn, advised them that the matter was still pending and before the Bar Association.

On May 11, 1929, Kroonenberg brought the situation to the attention of the attorney for the grievance committee of the Association of the Bar. In December, 1929, respondent was invited to appear before the grievance committee of the Association of the Bar in regard to this matter. Immediately respondent took steps looking to the withdrawal of the charges by Kroonenberg. A series of conferences were held at which respondent, Kroonenberg and mutual friends were present. Then Kroonenberg consulted another attorney. Respondent was induced to give $135 to Kroonenberg, representing the $125, to which respondent was entitled under the retainer in the matter, and the $10, which Kroonenberg claims to have given him for expenses. In addition to this $135, respondent delivered his promissory note, with satisfactory indorsement, for $500, payable in weekly installments of $5 per week. This was supposed to be in satisfaction of damages to Kroonenberg's reputation in Holland caused by respondent. In return for this payment of $135 and the note, Kroonenberg signed a letter to the Bar Association, stating as follows: " In reference to my complaint against one, Jac W. Wyte, I wish to advise that I have adjusted this matter and now desire to withdraw any and all charges I have heretofore brought against said attorney.

" May I also request that you mail to me any and all papers that I may have left at your office with reference to this case."

Kroonenberg also signed a letter to respondent advising him of the letter to the Bar Association withdrawing the charges, and, in turn, respondent signed a character letter for Kroonenberg. At the same time Kroonenberg executed a general release to respondent, which was to be held by Kroonenberg's new attorney to be delivered on the final payment of the note. There were returned to Kroonenberg all papers which respondent had in the matter of the claim of Delaunoy against Louis. Properly ignoring all

this, the grievance committee proceeded with its investigation. Kroonenberg failed to appear before the committee at the time fixed for the hearing. Respondent did appear, but on advice of counsel declined to testify.

Respondent's testimony before the learned official referee is that at the time he received the check from Louis & Co. he was in dire circumstances; he was in arrears for rent of his office and his apartment, and at both places he was threatened with dispossess proceedings; his parents were dependent upon him, his mother was sick and needed medical services; he had not paid his telephone bill and the company was threatening to cut off the service, and he was unable to pay his stenographer. He testified that until advised by his present counsel to the contrary, he had assumed that as attorney for collection he had power to indorse the check payable to the order of the client, in the name of the client, and to collect the proceeds in this manner.

The record indicates that before any complaint to the Bar Association respondent had paid Kroonenberg in full all that the latter was entitled to under the arrangement whereby respondent was entitled to retain twenty-five per cent for his services.

The record herein indicates that prior to the receipt of the payment from Louis & Co., respondent had conceived the plan of using the money for his own purposes, no doubt hoping to be able to repay it in small monthly installments. His inability to promptly make the monthly payments led to the disclosure of his deception.

This court has repeatedly pointed out, in other disciplinary proceedings, that common honesty should prompt attorneys to keep funds belonging to clients separate from their own funds and always to maintain their ability to pay in full what is due to clients. Failure to do so inevitably leads to trouble.

Respondent produced ten witnesses, all of whom had been his clients for a number of years and for each of whom he handled considerable sums of money for which he had always accounted satisfactorily, who also testified to his excellent reputation for honesty and integrity.

It is clear that Kroonenberg's purpose in bringing this matter to the attention of the Bar Association was to extort from respondent moneys to which Kroonenberg had no right of claim whatsoever.

That respondent should have allowed himself to be thus victimized is regrettable, but indicates his consciousness of guilt and his desire to avoid the disclosure of his duplicity towards his client. His conduct, following the notice to appear before the grievance committee of the Bar Association, is inexcusable. A similar situation was presented to this court in *Matter of Kelly* (197 App. Div.

41). There the court said: " We have frequently said that disciplinary proceedings are not instituted for the purpose of recovering money claimed to be due to a client from an attorney and that payment pending such proceedings does not condone the offense. The purpose of such investigation is to inquire into the character and conduct of an attorney to see whether or not it comports with the standard required of an honorable profession." And, in *Matter of Branch* (178 App. Div. 587), the court said: " It has been many times held by this court that disciplinary proceedings are instituted not for the purpose of adjusting differences between attorney and client or for forcing a settlement or bringing about the collection of moneys claimed to be due, but are solely for the purpose of maintaining the dignity and honor of the profession, disciplining unworthy members thereof or vindicating them when unjustly accused." Furthermore, as was pointed out in *Matter of Branch* (*supra*), it was respondent's obligation, as a member of the bar, to be frank and honest before the committee. Respondent violated this obligation and sought though his own silence, and the silence of Kroonenberg which he bought, to impede the investigation into the real nature of his dealings with his client and the latter's funds. The record amply proves that respondent has been guilty of misconduct as charged in the petition. He conceived a plan to mislead his client as to the terms of the settlement and the payment of the amount thereof. This plan he consistently followed out by misrepresentation and the making of untruthful statements. It was no sudden, rash act, prompted by acute necessity, but the long drawn out carrying into effect of a plot to use his client's money as long as he could. The charge is a grave one and cannot be overlooked, even if respondent had theretofore borne a good reputation and dealt honestly with other clients. The respondent should be suspended from practice for the period of one year, with leave to apply for reinstatement at the expiration of that term upon proof of his compliance with the conditions incorporated in the order.

FINCH, MCAVOY, MARTIN and O'MALLEY, JJ., concur.

Respondent suspended for one year.